UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYANT FONSECA, an individual, on behalf of himself and all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>HEWLETT-PACKARD COMPANY, a Delaware Corporation; HP ENTERPRISE SERVICES, LLC, a Delaware Limited Liability Company; HP, Inc., a Delaware corporation; and DOES 1-100, inclusive,<br><br>Defendants. | Case No.: 19cv1748-GPC-MSB<br><br>**ORDER GRANTING MOTION FOR ENTRY OF JUDGMENT UNDER 54(b)**<br><br>**[ECF No. 47]** |

Before the Court is Plaintiff Bryant Fonseca ("Plaintiff")'s motion for immediate entry of judgment on counts five, six, and eight of the Third Amended Complaint ("TAC") pursuant to Rule 54(b). ECF No. 47. Defendants Hewlett-Packard Company, HP Enterprise Services, LLC and HP Inc. (collectively, "HP") oppose. ECF No. 49. The

1

Court finds the motion suitable for disposition without oral argument pursuant to CivLR 7.1(d)(1). For the reasons set forth below, the Court GRANTS Plaintiff's motion for entry of judgment pursuant to 54(b).

## BACKGROUND

Plaintiff was an employee of HP at HP's San Diego site for nearly thirty-six years. ECF No. 17 ("TAC") ¶ 18. In May 2017, HP terminated Plaintiff pursuant to its 2012 U.S. Workforce Reduction ("WFR") plan. *Id.* ¶¶ 23, 44. Plaintiff was notified that he would have two weeks as part of his "redeployment period" to find another job with HP, which would allow him to continue working without interruption, and thereafter would be terminated and allowed pursuant to the 60-day Preferential Rehire Period to apply for jobs within HP without having to undertake the normal rehire approval process. *Id.* ¶ 45. Plaintiff was not rehired by HP and has yet to find gainful employment. *Id.* ¶¶ 49, 51.

Plaintiff alleges that HP eliminated the jobs of older, age-protected employees in order to begin replacing them with younger employees. *Id.* ¶¶ 27–28. According to Plaintiff, the WFR plan disproportionately targeted older, age-protected employees, and older employees were almost never rehired pursuant to the Preferential Rehire Period provided for in the WFR Plan. *Id.* ¶¶ 29, 32, 35. Plaintiff further alleges that HP and non-party 3D Systems Inc. ("3D Systems") had entered into a "no poach" agreement that prevented Plaintiff and other employees from obtaining employment at 3D Systems. *Id.* ¶¶ 61, 65. Plaintiff also asserts that the WFR Plan restrained HP employees' ability to work for competitors because of (1) its requirement that WFR Plan participants employees notify management if they accept a job offer with a competitor in order to receive severance pay, (2) the provision in the summary Plan Description of the WFR Plan that states that acceptance of a position with a competitor during the redeployment period would render them ineligible for severance pay, *id.* ¶¶ 32–37, 66, and (3) the Rehire Policy incorporated in the WFR Plan that renders "employees who left the

company, in May 2012 or later, through a workforce reduction program . . . ineligible for hire or to be engaged as an agency contractor," ECF No. 22-2 at 118.

On November 29, 2017, Plaintiff filed an initial class action complaint in the Superior Court for the State of California, County of San Diego. ECF No. 1-5, Ex. A-1. After initial removal and subsequent remand by this Court, Defendant moved for a stay of the entire action in the Superior Court. ECF No. 47-2, Ex. 1, at 5.[1] The Superior Court issued an order staying the case "except with respect to the two 'no poach' antitrust counts (counts 5 and 6)" in light of *Forsyth v. HP Inc., et al.*, an action currently pending in the U.S. District Court for the Northern District of California that involves claims against Defendant HP "revolving around the plaintiffs' 'primary right' not to be laid off on the basis of age in favor of younger workers."[2] *Id.* at 8. The Superior Court found that the antitrust claims in counts five and six were "in no way replicated in *Forsyth*." *Id.* at 9.

On April 22, 2019, Plaintiff filed a First Amended Complaint ("FAC") in Superior Court. ECF No. 1-10, Ex. A-25. On August 2, 2019, the Superior Court sustained Defendants' demurrer to counts five and six of the FAC. ECF No. 1-12, Ex. A-37. On August 12, 2019, Plaintiff filed a Second Amended Complaint ("SAC") in Superior Court. ECF No. 1-2. The SAC re-alleged the counts in the FAC and additionally alleged an eighth count for violation of the Sherman Act, 15 U.S.C. § 1. *Id.* ¶¶ 182−88. On September 11, 2019, Defendant removed the case to this Court. ECF No. 1. On

---

[1] For documents filed on the electronic docket, the Court references the page numbers imprinted by the electronic filing system.

[2] The Court takes judicial notice of the existence of the state court filings, as a matter of public record. Fed. R. Evid. 201(b); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001) (noting that judicial notice of the fact of another court's proceedings is proper); *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (granting judicial notice of pleadings filed in a related state court action).

February 3, 2020, the Court granted Defendants' motion to dismiss counts five, six, and eight of the SAC. ECF No. 16.

On February 24, 2020, Plaintiff filed the TAC. ECF No. 17. In the TAC, Plaintiff alleged eight counts: (1) Disparate Treatment – Cal. Gov. Code §§ 12900 et seq.; (2) Disparate Impact – Cal. Gov. Code §§ 13940(A), 12941; (3) Wrongful Termination in Violation of Public Policy; (4) Failure To Prevent Discrimination – Cal. Gov. Code §§ 12900 et seq.; (5) Violation of the Cartwright Act, Cal. Bus. & Prof. Code §§ 16720 et seq.; (6) Violation of Cal. Bus. & Prof. Code §§ 16600 et seq.; (7) Unfair Competition – Cal. Bus. & Prof. Code §§ 17200 et seq. and (8) Violation of the Sherman Act, 15 U.S.C. § 1. *Id.* ¶¶ 103–92. Plaintiff sought to represent two classes: the Age Discrimination Class (counts one, two, three, four, and seven) and the Antitrust Class (counts five, six, seven, and eight). *Id.* ¶¶ 9, 86, 103, 118, 131, 137, 147, 155, 167, 188. Defendants moved to dismiss counts five, six, and eight, the only counts not stayed by the Superior Court. ECF No. 18; ECF No. 47-2, Ex. 1, at 8. On August 11, 2020, the Court granted Defendants' motion and dismissed counts five, six, and eight with prejudice. ECF No. 44. The Court subsequently confirmed that the stay of the case with respect to the other, non-dismissed counts of the complaint, as ordered by the Superior Court, was still in place. ECF No. 46.

## DISCUSSION

Plaintiff moves for immediate entry of judgment on counts five, six, and eight pursuant to Federal Rule of Civil Procedure ("Rule") 54(b).[3] Defendants oppose.

Rule 54(b) states:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are

---

[3] Plaintiff originally requested, in the alternative, certification for interlocutory appeal pursuant to 28 U.S.C. 1292(b), but withdrew that request in his reply. ECF No. 50 at 11.

> involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b). In evaluating whether entry of judgment as to one or more claims under Rule 54(b) is appropriate, the "district court must first determine that it is dealing with a 'final judgment.'" *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980). For a judgment to be "final," it must be "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Id.* (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956).

"Once having found finality, the district court must go on to determine whether there is any just reason for delay." *Id.* at 8. While Rule 54(b) requests should not be granted as a matter of course, "[i]t is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal. This discretion is to be exercised 'in the interest of sound judicial administration'" with an eye towards preserving the historic federal policy against piecemeal appeals. *Id.* at 8, 10. The court must make two separate inquiries: first, the court must consider judicial administrative interests to determine "[w]hether a final decision on a claim is ready for appeal," and second, the court must evaluate the equities involved. *See Wood v. GCC Bend, LLC*, 422 F.3d 873, 878 (9th Cir. 2005) (quoting *Curtiss-Wright*, 446 U.S. at 8); *In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. 1917, 2016 WL 5815789, at *2 (N.D. Cal. Oct. 5, 2016).

Neither party disputes that the Court's order dismissing counts five, six, and eight with prejudice constitutes a final judgment for the purposes of Rule 54(b). The Court's order finally disposed of those claims in their entirety without leave to amend. *See Curtiss-Wright*, 446 U.S. at 7. Accordingly, the Court turns to "whether there is any just reason for delay" of entering partial final judgment on counts five, six, and eight of the TAC. *Id.* at 8.

### A. Judicial Administration Interests

HP argues that both Plaintiffs' age discrimination and anti-competitiveness claims arise out of the same set of facts related to the WFR plan, and therefore there is a high risk that entry of judgment under 54(b) would lead to piecemeal appeals. Plaintiff argues that although the age discrimination counts and anti-competitiveness counts both involve the WFR plan, they do not involve any of the same issues that would have to be decided on appeal.

The inquiry into judicial administration interests "does not require the issues raised on appeal to be completely distinct from the rest of the action, 'so long as resolving the claims would streamline the ensuing litigation.'" *Jewel v. Nat'l Sec. Agency*, 810 F.3d 622, 628 (9th Cir. 2015) (quoting *Noel v. Hall*, 568 F.3d 743, 747 (9th Cir. 2009)). Although neither the Supreme Court nor Ninth Circuit has laid out a precise test for determining whether judicial administrative interests weigh in favor of entry of partial judgment under 54(b), in *Curtiss-Wright*, "[t]he court considered whether certification would result in unnecessary appellate review; whether the claims finally adjudicated were separate, distinct, and independent of any other claims; whether review of the adjudicated claims would be mooted by any future developments in the case; whether an appellate court would have to decide the same issues more than once even if there were subsequent appeals; and whether delay in payment of the judgment (which in that case could be years because of the complexity of the remaining claims) would inflict severe financial harm." *Wood*, 422 F.3d at 878 n.2. Similarity of legal or factual issues weighs heavily against entry of partial judgment under 54(b), *Wood*, 422 F.3d at 879–80, but "[c]laims with partially overlapping facts are not foreclosed from being separate for purposes of Rule 54(b)." *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 575 (9th Cir. 2018), *cert. denied sub nom. Teck Metals Ltd. v. Confederated Tribes of the Colville Reservation*, 139 S. Ct. 2693 (2019) (internal quotation marks omitted).

The Court begins by noting that the alleged "no-poach" agreement between HP and 3D systems, which serves as one factual basis for the TAC's anti-competitiveness counts, is not itself related to the age discrimination claims. Therefore, the question of the separability of the anti-competitiveness claims from the age discrimination claims turns on the TAC's theory of anti-competitive conduct related to the WFR Plan and the extent of its overlap with the age discrimination claims.[4] Plaintiff's anti-competitiveness theory, as it relates to the WFR Plan, is that the provisions in the WFR Plan providing for denial of severance payment in certain circumstances restricted Plaintiff and others from seeking work with competitors; that it renders employees who left HP pursuant to the WFR Plan ineligible for hire or to be engaged as agency contractors; and that the WFR Plan's severance provisions evidence parallel conduct between HP and 3D Systems. TAC ¶¶ 66, 157; ECF No. 22 at 18. Plaintiff's age discrimination theory is that the WFR Plan was applied discriminatorily to older employees, causing them to be laid off, not re-hired, and not re-instated because of their age; that the WFR Plan disproportionately impacted older employees; that older employees were wrongfully terminated because of their age; and that HP knew of, but did nothing to prevent the discriminatory application of the WFR Plan from occurring. TAC ¶¶ 23, 29, 32, 38–43.

Although elements of the WFR Plan support both Plaintiff's anti-competitiveness and age discrimination claims, the fact that Plaintiff's claims arise out of the same transaction or occurrence—termination under the WFR Plan—is not sufficient by itself to

---

[4] Plaintiff argues that the Superior Court's decision to order a stay only with respect to the age discrimination claims, and not the anti-competitiveness claims, demonstrates that there is no factual overlap between the claims. ECF No. 47-1 at 6. However, the fact that the Superior Court granted a stay only with respect to the age discrimination claims is not particularly useful in determining the relatedness of the age discrimination claims and anti-competitiveness claims at this stage of the case, given the different legal standard applied for the stay issue and the fact that many of the WFR Plan-related anti-competitiveness allegations were added in the TAC, after removal to this Court. *See* ECF No. 26 ¶¶ 66, 157, 163.

7

foreclose partial entry of judgment. *See Pakootas*, 905 F.3d at 575. The Court must consider the elements and alleged factual basis for each claim to determine whether the counts are separable for the purposes of Rule 54(b) or whether the same issues would arise on subsequent appeal. Evaluating Plaintiff's Section 16600 claim would require the appeals court to consider the WFR Plan's severance provisions and Plaintiff's standing to challenge them, whether the WFR Plan constitutes a contract, the Rehire Policy's incorporation into the WFR Plan, and whether the severance and Rehire Policy provisions restricted Plaintiff's ability to work for competitors. *See* Cal. Bus. & Prof. Code § 16600; ECF No. 44 at 23–32. Although Plaintiff does contend that the Preferential Rehire Period was not neutrally applied in support of his age discrimination claims, TAC ¶ 32–33, Plaintiff's age discrimination claims are predicated on the argument that the WFR Plan as a whole was discriminatorily and disproportionately applied to older employees—not that the terms of the Rehire Policy or severance provisions themselves constitute or evidence age discrimination. Subsequent appeal of the age discrimination claims would not likely involve scrutiny of the terms of those provisions, as would be required in analyzing the Section 16600 claim. Further, whether Plaintiff was impeded from seeking employment with competitors following his termination is not relevant to his claim that HP made discriminatory decisions regarding who to terminate. As for Plaintiff's antitrust claims, counts five and eight, Plaintiff is required to show a conspiracy, an intent to harm or restrain trade or commerce, injury to competition, and antitrust standing. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008); *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012); *Cty. Of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001). Plaintiff's argument related to the WFR Plan in support of his antitrust claims is that the WFR Plan's severance provisions were a mechanism to support HP's no-poach agreements with competitors and evidence such parallel conduct. TAC ¶¶ 37, 66; ECF

No. 22 at 18.  Like his Section 16600 claim, evaluation of Plaintiff's antitrust claims would entail looking to the terms of the severance provisions of the WFR Plan and determining whether it amounts to or demonstrates an agreement to restrict competition, an inquiry far removed from the age discrimination issue.  Ultimately, the crux of the age discrimination claims is to whom the WFR Plan and its provisions were applied, rather than interpretation of the Rehire Policy and severance provisions at issue in the anti-competitiveness claims.  Further, there is no likelihood that the anti-competitiveness claims will be mooted by future developments in the case regarding the age discrimination claims, because an adverse decision on the age discrimination claims would not foreclose relief on the anti-competitiveness claims.

One potential area of overlap between the age discrimination and anti-competitiveness claims is count seven, which alleges that both HP's discriminatory and anti-competitive practices constitute unfair competition.  TAC ¶ 171.  If count seven were to come up on a subsequent appeal, the alleged anti-competitive actions taken by HP would again come before the court of appeals.  However, the "same issue" would not need to be decided again, as an adverse decision on Plaintiff's anti-competitiveness arguments in the appeal now contemplated would foreclose relief under the Unfair Competition Law on the grounds that the anti-competitive acts were unlawful, narrowing the issues to only whether the acts were unfair.  Cal. Bus. & Prof. Code § 17200 et seq.; TAC ¶ 174.  A favorable decision—namely, that Plaintiff has stated a Section 16600 or antitrust claim and thus the acts as alleged were unlawful—would likewise narrow the issues, as the appeals court would not have to again consider the unlawfulness of those acts.  *See Leonel v. Am. Airlines, Inc.*, 400 F.3d 702, 714 (9th Cir. 2005), *opinion amended on denial of reh'g*, No. 03-15890, 2005 WL 976985 (9th Cir. Apr. 28, 2005).

In sum, although Plaintiff's age discrimination and anti-competitiveness claims both involve the WFR Plan, the claims involve distinct issues that are not likely to lead to

piecemeal appeals involving substantially overlapping questions of law or fact. Accordingly, the Court finds that judicial administration interests do not weigh in favor of delaying entry of judgment on counts five, six, and eight.

### B.    Equity Interests

The Court must also take into account the equity interests before determining, in its discretion based on all the facets of the case, that there is no just reason for delaying partial entry of judgment pursuant to Rule 54(b). *See Curtiss-Wright*, 446 U.S. at 10–12. Plaintiff argues that the equities favor entry of judgment because otherwise, the anti-competitiveness counts will be substantially delayed pending resolution of *Forsyth*. Plaintiff asserts that such delay will prejudice Plaintiff by preventing him from seeking reemployment with HP and HP's contractors, by causing the loss of witnesses and evidence, and by preventing resolution via settlement.  HP argues that delay is insufficient to justify entry of judgment as to the other counts.

"Rule 54(b) was adopted in view of the breadth of the civil action the Rules allow, specifically to avoid the possible injustice of delaying judgment on a distinctly separate claim pending adjudication of the entire case." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 409–10 (2015) (quoting Report of Advisory Committee on Proposed Amendments to Rules of Civil Procedure 70 (1946)) (internal quotation marks and brackets omitted). HP is correct that delay in resolution of the antitrust counts cannot, standing alone, constitute an equity interest weighing in Plaintiff's favor, as every party seeking partial entry of judgment faces the prospect of delay if their Rule 54(b) motion is denied. However, the fact that Plaintiff's age discrimination claims are subject to a stay pending resolution of another district court case does suggest that there is no just reason to delay entry of judgment on the anti-competitiveness claims.  Plaintiff's age discrimination and anti-competitiveness claims were already being litigated on separate tracks before the Court's order dismissing counts five, six, and eight.  There is little reason to now require

Plaintiff to wait for the age discrimination claims to catch up when the anti-competitiveness claims would have likely proceeded into discovery and towards summary judgment or trial on their own, had the Court denied HP's motion to dismiss. Further, although the Court decided against Plaintiff on his anti-competitiveness claims, if the court of appeals were to reverse and Plaintiff were to ultimately succeed on those claims, Plaintiff would more quickly be awarded the injunctive relief he seeks and avoid the continuing harm he alleges as a result of being unable to seek employment from HP or HP's contractors.

Accordingly, the Court finds that the equities support partial entry of judgment pursuant to Rule 54(b).

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff's motion for immediate entry of judgment on counts five, six, and eight pursuant to Rule 54(b).

**IT IS SO ORDERED.**

Dated: October 21, 2020

Hon. Gonzalo P. Curiel
United States District Judge